IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| DR. FIONA AXELSSON, | ) |
| | ) Case No: 3:22-cv-56-PDW-ARS |
| Plaintiff, | ) |
| | ) |
| v. | ) **PLAINTIFF'S MEMORANDUM** |
| | ) **IN OPPOSITION TO** |
| UNIVERSITY OF NORTH DAKOTA | ) **DEFENDANT NORTH** |
| SCHOOL OF MEDICINE & HEALTH | ) **DAKOTA PROFESSIONAL** |
| SCIENCES; SANFORD; SANFORD | ) **HEALTH PROGRAM'S** |
| HEALTH; and NORTH DAKOTA | ) **MOTION TO DISMISS** |
| PROFESSIONAL HEALTH | ) |
| PROGRAM, | ) |
| | ) |
| Defendants. | ) |

In moving this Court to dismiss it from this action, the North Dakota Professional Health Program ("ND PHP") makes a fact-based argument in support of a 12(b)(6) motion, conflates a merits-based argument with a basis for this court's jurisdiction, and – despite its admission that it is not a governmental entity (Doc. 35) and is governed by its own specific statute – postulates its relationship with the ND Board of Medicine means it stands on the same immunity footing as the ND Board of Medicine. None of these – even if true, which Plaintiff vehemently contests – is a basis for dismissal at the initial pleadings stage. Consequently, Defendant's[1] motion to dismiss should be denied.

## I. This Court Has Subject Matter Jurisdiction Over Plaintiff's Claims Against ND PHP

Defendant begins its motion with a several page argument that this Court lacks subject matter jurisdiction. However, ND PHP's main argument for this Court's lack of

---

[1] While there are four defendants in this case, only ND PHP filed a Motion to Dismiss. Consequently, any reference in this Opposition to "Defendant" is to ND PHP.

1

subject matter jurisdiction is not a subject matter jurisdiction issue at all. It is in fact a merits-based argument about the applicability of the state statute that outlines when ND PHP can be held liable for its actions. As outlined below any analysis of a statute's applicability inherently requires this Court to <u>have</u> subject matter jurisdiction.[2] And its second argument, that Plaintiff has not alleged that more than $75,000 is at issue in its claims against ND PHP, is easily disproved as shown below. Defendant's attacks on this court's subject matter jurisdiction should be denied.

    a. **A Purported Statutory Defense Does Not Strip this Court of Subject Matter Jurisdiction**

In arguing this Court lacks subject matter jurisdiction, Def. Mem. pp. 6-12, ND PHP contends that the state statute that outlines when ND PHP can be held liable for its actions is in fact a basis for finding this Court lacks subject matter jurisdiction, and then asks the Court to rule it cannot be held liable under the statute as a matter of law by deciding an issue of "novel first impression" – without jurisdiction to adjudicate the case. However, the argument as to the statute's applicability to this case presupposes the statute has anything to do with subject matter jurisdiction in the first place. To the contrary, ND PHP's circular argument prevents them from getting the ruling they seek. If the court does not have jurisdiction, it cannot rule on the statutory defense ND PHP asserts.

---

[2] And as further discussed below, Defendant's 12(b)(6) arguments for dismissal on the basis of the statute requires this Court to weigh evidence and believe the factual averments of the moving party, something it cannot do at any point in these proceedings.

2

1. Subject Matter Jurisdiction Standard

"[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 913 (8th Cir. 2016) (Beam concurring) (citations omitted). "If the court has no jurisdiction, it has no power to enter a judgment on the merits and must dismiss the action." *Carlsen*, 833 F.3d at 913 (Beam concurring) (citing *Haywood v. Drown*, 556 U.S. 729, 769, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009) (quoting 10A Charles Wright, Arthur Miller, & Mary Kay Kane, Federal Practice and Procedure § 2713 (3d ed. 1998)) (Thomas, J., dissenting). "'[J]urisdiction is power to declare the law,' and '[w]ithout jurisdiction the court cannot proceed at all in any cause.'" *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (second alteration in original) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)).

2. Elements of a Statute are not Subject Matter Jurisdiction

What ND PHP is doing is making a merits-based argument an attack on this court's jurisdiction. While liability under ND CC 43-17.3-08 may be "a novel issue of first impression," Def. Mem. p. 8, conflating a merits-based argument with an attack on subject matter jurisdiction is not novel. It happens relatively frequently, as the United States Supreme Court described in an analogous situation in *Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235, 546 U.S. 500, 163 L.Ed.2d 1097 (2006).

"This case concerns the distinction between two sometimes confused or conflated concepts: federal-court 'subject-matter' jurisdiction over a controversy; and the essential

3

ingredients of a federal claim for relief." *Arbaugh,* 546 U.S. at 503. The Court went on to discuss Title VII of the Civil Rights Act of 1964 and its 15-employee threshold. A plaintiff had brought a discrimination action against her employer, and after receiving a $40,000 verdict at trial, the employer in a post-trial motion for the first time questioned subject matter jurisdiction by raising the issue of not having 15 employees. *Id.* at 504. The District Court considered itself obliged to dismiss the complaint for want of jurisdiction. *Id.* The Supreme Court rejected that categorization and held "that the numerical threshold does not circumscribe federal-court subject-matter jurisdiction. Instead, the employee-numerosity requirement relates to the substantive adequacy of Arbaugh's Title VII claim, and therefore could not be raised defensively late in the lawsuit, i.e., after Y&H had failed to assert the objection prior to the close of trial on the merits." *Id.*

The same here. ND PHP's argument regarding the good faith actions of the ND PHP is not jurisdictional. It is an element of Plaintiff's claims against Defendant. If Plaintiff cannot show ND PHP acted without good faith, then the claims cannot proceed. However, this is not a jurisdictional bar. It is a fact-based, merits-based affirmative defense. It carries no water in analyzing subject matter jurisdiction.

The Court drew a further distinction between statutes that prescribe the needed elements of a claim and their conferring jurisdiction upon the controversy.

> Arbaugh invoked federal-question jurisdiction under § 1331, but her case 'arises' under a federal law, Title VII, that specifies, as a prerequisite to its application, the existence of a particular fact, i.e., 15 or more employees. We resolve the question whether that fact is 'jurisdictional' or relates to the 'merits' of a Title VII claim mindful of the consequences of typing the 15-

4

> employee threshold a determinant of subject-matter jurisdiction, rather than an element of Arbaugh's claim for relief.

*Arbaugh*, 546 U.S. at 513-14. In resolving the issue, the Court made additional distinctions relevant here. First, because subject matter jurisdiction can never be waived and a court is obligated to determine its existence on its own accord, the Court stated, "Nothing in the text of Title VII indicates that Congress intended courts, on their own motion, to assure that the employee-numerosity requirement is met." *Arbaugh*, 546 U.S. at 514. The same here. N.D. Cent. Code § 43-17.3-08 does not require a court to find – on its own volition – whether ND PHP acted in good faith or not. It does not speak to a court's jurisdiction, it simply addresses how ND PHP avoids liability.

Second, if subject matter jurisdiction turns on contested facts, the trial judge is the final arbiter of the issue at the district court level. *Id.* By contrast, "If satisfaction of an essential element of a claim for relief is at issue, however, the jury is the proper trier of contested facts." *Id.* at 514. As discussed further below, the question to be determined from the standpoint of the North Dakota statute is whether ND PHP acted in good faith. N.D. Cent. Code § 43-17.3-08. It is a factual question, and based on what is alleged in the complaint, a jury could conclude that ND PHP acted not in good faith.

While the Supreme Court looked at a federal statute in deciding *Arbaugh*, the same analysis is appropriate here when Defendant avers its coverage under a state statute deprives this Court of jurisdiction. The statute contains an element of Plaintiff's claim – that ND PHP performed its actions in good faith – which goes to the merits of Plaintiff's case and is not grounds for jurisdictional dismissal. *See e.g.*, *Cross v. Fox*, 23 F.4th 797,

5

801 (8th Cir. 2022) (applying *Arbaugh* 546 U.S. at 515 and finding language about the voting rights act covering "states and political subdivisions" is not jurisdictional and instead is a provision that could support jurisdiction in meritorious cases).

Whether Plaintiff can show ND PHP acted without good faith is not a jurisdictional argument. It is a merits-based argument, and a ruling considering the applicability of a state statute necessarily requires the court to have jurisdiction. Dismissal under Rule 12(b)(1) for failure to satisfy ND Cent. Code § 43-17.3-08 is not an appropriate request for relief under the facts presented here. Consequently, any argument about Plaintiff not satisfying the state statute as a basis for finding a lack of subject matter jurisdiction is unsupported by the law and the Rules of Civil Procedure, and Defendant's motion should be denied.

Defendant moves on from the assertion that its good-faith-at-the-pleadings-stage-as-a-matter-of-law defense requires dismissal to assert Plaintiff cannot satisfy the amount in controversy requirement. However, Plaintiff's tortious interference with contract claim clearly satisfies that minimal jurisdictional bar.

      b. **Plaintiff's Claims Against ND PHP put More than $75,000 into Controversy**

"Federal court diversity jurisdiction of state law claims requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants." *Onepoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007) (citing 28 U.S.C. § 1332(a)). "Whether a plaintiff satisfies the $75,000 amount in controversy requirement is a jurisdictional issue for the court to decide." *Krenz v. Xto Energy Inc.*,

6

770 F.Supp.2d 1011, 1014 (D. N.D. 2011) (citing *Nagel v. Wal-Mart Stores, Inc.*, 319 F.Supp.2d 981, 983 (D. N.D. 2004) and *Trimble v. Asarco, Inc.*, 232 F.3d 946, 959 (8th Cir.2000)). [3]

"Typically, complaints need only allege the jurisdictional amount in good faith and will be dismissed only if it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Am. Family Mut. Ins. Co. v. Vein Ctrs. for Excellence, Inc.*, 912 F.3d 1076, 1080-81 (8th Cir. 2019) (citing *Scottsdale Ins. Co. v. Universal Crop Prot. Alliance, LLC*, 620 F.3d 926, 931 (8th Cir. 2010) (alteration in original) (quoting *Kopp v. Kopp*, 280 F.3d 883, 884 (8th Cir. 2002)). However, if the amount in controversy is challenged, "the party invoking federal jurisdiction… has the burden of proving the requisite amount by a preponderance of the evidence." *Onepoint Solutions, LLC*, 486 F.3d at 347 (citing *Rasmussen v. State Farm Mut. Auto. Ins. Co.,* 410 F.3d 1029, 1031 (8th Cir. 2005)).

"It must appear to a legal certainty that the claim is for less than the jurisdictional amount to warrant a dismissal or remand back to state court." *Lochthowe v. State Farm Mut. Auto. Ins. Co.*, 470 F.Supp.2d 1033, 1034 (D. N.D. 2007) (citing *Capitol Indemnity Corp. v. 1405 Associates, Inc.*, 340 F.3d 547, 549 (8th Cir.2003)).

---

[3] Defendant does not attack the parties' diversity of citizenship, and Plaintiff does not address it in the body of this memorandum. However, in light of this Court's obligation to determine on its own that it does have subject matter jurisdiction and Plaintiff having alleged diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), Plaintiff states she has alleged that she is a citizen of a foreign state and is not a permanent resident of the United States, and that Defendants are all headquartered and have their principal places of business in North Dakota. Compl. ¶ 7.

7

Importantly, "[i]n this circuit, the amount in controversy is measured by 'the value to the plaintiff of the right sought to be enforced.'" *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 821 (8th Cir. 2011) (citing *Advance Am. Servicing of Ark. v. McGinnis*, 526 F.3d 1170, 1173 (8th Cir. 2008)). Here, without having to do much in the way of mental gymnastics, it is clear the value of the right plaintiff seeks to be enforced is nearly $200,000 – easily more than the required $75,000.

In her Amended Complaint, Plaintiff has alleged tortious interference with a contract (Count 25), breach of contract (count 26), and defamation (Count 27) against ND PHP. Contrary to ND PHP's scornful assertion, Plaintiff has not made a "misguided conclusion" that all 27 of her claims aggregately satisfy the jurisdictional threshold, or made any attempt to get into federal court through "creative jurisdictional pleading." Def. Mem. p. 1. Plaintiff seeks compensation for at least the year of attending-physician-level income she has lost due to the discriminatory and tortious actions of the three defendants in this case. If ND PHP's tortious actions contributed or led to this loss of a year's income, and the evidence shows its actions were taken in the absence of good faith, then they are responsible for Plaintiff's damages. The dots a factfinder must connect are no more numerous than that.

Here, Plaintiff has alleged that she had a contract with Sanford Clinic North in Perham, MN, that was set to begin on or about July 11, 2022 at the conclusion of her residency with UND and would have paid her a substantial annual income. Doc. 23, Plaintiff's First Amended Complaint, ¶ 79. That substantial income would have been

$256,000 for the year July 1, 2022 to June 30, 2023. Exh. 1.[4] Her income for 2021-22 as a medical resident was $63,942. Exh. 2. After being unable to return to work and finish her residency, Sanford in Perham rescinded Plaintiff's Staff Physician Agreement. Compl ¶ 83; Exh. 3. Plaintiff has alleged that one of the possible reasons that her contract with Perham was rescinded was because of the tortious interference of ND PHP, and that their conduct was not taken in good faith. Am. Compl. ¶¶ 58, 70-71, 74-77, 97-102. Now, instead of graduating in 2022 and beginning her career as an attending physician, Plaintiff did not work in 2021-22 and will have to spend 2022-23 repeating the year as a medical resident, making $64,000 at a new program. Exh. 4. Plaintiff has alleged ND PHP's tortious interference has caused the rescission of a contract worth $256,000 per year and instead is spending this year working for $64,000. The difference between the two is $192,000, an amount clearly more than the $75,000 jurisdictional threshold.

The next question is whether this is an amount recoverable by Plaintiff for her claims against ND PHP. In analyzing the amount in controversy of diversity-based claims, the district court applies the applicable state law. *See e.g.*, *In re Trimble*, 232 F.3d at 962-65 (predicting how the Nebraska Supreme Court would analyze a medical

---

[4] To support her allegations as to the amount in controversy, Plaintiff attaches as exhibits her contract for employment at Sanford beginning July 1, 2022 as Exhibit 1; the contract from her residency at UND for 2021-22 as Exhibit 2; the rescission letter from Sanford as Exhibit 3; and her contract from her new residency program as Exhibit 4. "When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts typically look only to the pleadings and determine whether they state a plausible claim for relief. But a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) raises a factual challenge to the court's jurisdiction, and courts may look to evidence outside the pleadings and make factual findings." *Vein Ctrs. for Excellence, Inc.*, 912 F.3d at 1080, n.4 (citations omitted).

9

monitoring claim and discussing potential recovery for other state law claims under Nebraska state law).

The North Dakota Supreme Court has concluded that a tortious interference with contract claim is tantamount to a breach of contract claim for the same contract at issue.

> "We have previously recognized the closely related cause of action for tortious interference with an existing contract. See, e.g., *Messiha v. State*, 1998 ND 149, ¶ 10, 583 N.W.2d 385; Tr*acy v. Central Cass Pub. Sch. Dist.*, 1998 ND 12, ¶ 9, 574 N.W.2d 781; *Fronteer Directory Co. v. Maley*, 1997 ND 162, ¶ 14, 567 N.W.2d 826. In *Bekken v. Equitable Life Assur. Soc.*, 70 N.D. 122, 153, 293 N.W. 200, 217 (1940), this Court explained:
>
>> Wrongful interference with contractual rights, whether such interference induces or prevents a third person to refrain from forming a contract, or induces such person to break an existing contract, will render the person whose wrongful conduct is responsible for these results liable in damages to the party injured.

*Trade 'N Post v. World Duty Free Americas*, 628 N.W.2d 707, 716, 2001 ND 116 (N.D. 2001). Consequently it is the difference between Plaintiff's loss of income from the Perham contract and the amount of income she will make in her '22-23 contract that makes the beginning of her tortious interference damages.

Further, Plaintiff has alleged a proper tortious interference claim. "In order to establish a prima facie case of tortious interference with contractual relations, the plaintiff must show that: (1) a contract existed; (2) the contract was breached; (3) the defendant instigated the breach; and (4) the defendant did so without justification." *Hennum v. City of Medina*, 402 N.W.2d 327, 336 (N.D. 1987) (citing *Bismarck Realty Co. v. Folden*, 354 N.W.2d 636, 642 (N.D. 1984). Plaintiff has alleged there was a contract, Compl. ¶ 79; that the contract was breached, Compl. ¶¶ 82-83; that ND PHP instigated that breach,

Compl. ¶¶ 75, 97-98; and that ND PHP did so without justification, Compl. ¶¶ 97-99, 101. Had ND PHP modified its monitoring agreement with Dr. Axelsson – as it was required to do – one of the major impediments to her returning to work would have been removed, and it is possible Dr. Axelsson could have continued working for UND and Sanford. Compl. ¶¶ 97-99.

      The cases are clear that Plaintiff's allegations meet the jurisdictional minimums. By contrast, the cases ND PHP relies upon are insurance cases that have maximum benefits in their contracts. In *Crenshaw v. Great Central Insurance Co.*, 482 F.2d 1255, 1257 (8th Cir. 1973), the case was remanded because the plaintiffs sought $10,000 in damages pursuant to the insurance policy's uninsured motorist coverage for decedent's wrongful death when the amount in controversy had to be more than $10,000. *Id* at 1260. In *Baker v. State Farm Mut. Auto. Ins. Co.*, 846 F.2d 495 (8th Cir. 1988), the Eighth Circuit decided the District Court had not erred when deciding a preemption statute that provided for, at most, $613.20 in damages for the plaintiff did not meet the same $10,000 jurisdictional minimum even after taking potential attorney fees into account, because on $613.20 in damages, "an attorney's fee of $9,386.81 would clearly be unreasonable." *Id.* at 497. But here, Plaintiff can show there is nearly $200,000 at issue in her tortious interference claim.

      Aside from any other accompanying damages, this simple disparity – the amount she would have made as an attending physician as compared to what she will make as a resident physician – satisfies the amount in controversy requirements as to Plaintiff's claims against ND PHP. Subject matter jurisdiction is proper here.

11

Other cases cited by Defendant actually support Plaintiff's argument. The case ND PHP relies on for its "legal impossibility" standard finishes that same paragraph by stating, "Neither the existence of a valid defense nor subsequent events reducing the amount in controversy divest the court of jurisdiction." *Schubert*, 649 F.3d at 822-23 (citing See *Zacharia v. Harbor Island Spa, Inc.,* 684 F.2d 199, 202 (2d Cir. 1982) (holding existence of a valid defense limiting plaintiff's recovery to $1,000 did not divest the court of jurisdiction to hear the case); *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990) (holding dismissal of the plaintiff's key claims on summary judgment did not affect the amount in controversy); *Griffin v. Red Run Lodge, Inc*., 610 F.2d 1198, 1204 (4th Cir. 1979) (determination that one of the aggregated claims, which was necessary to reach the jurisdictional threshold, was without merit did not destroy jurisdiction)). Even if ND PHP can ultimately prevail on its statutory immunity defense once the factual record is developed enough to determine the validity of its "good faith" defense, it does not strip this court of jurisdiction.

*Schubert*, in fact, supports this court's jurisdiction. In *Schubert*, the plaintiff had interest in half of an insurance claim that provided coverage at $124,500. *Schubert*, 649 F.3d at 820. Consequently, the amount available to plaintiff at the time the suit was brought was $62,250 – below the jurisdictional threshold. *Id.* at 821. The 8th Circuit analyzed the plaintiff's second claim for vexatious refusal to pay and said, even though the district court granted summary judgment on that claim and plaintiff did not appeal the claim, the amount in controversy minimum was met because that amount was in controversy at the start of the claim. *Id.* The same here. Even if Defendant is ultimately

12

successful on its statutory defense, Plaintiff has alleged enough damages and enough facts to satisfy the jurisdictional minimum for an amount in controversy.

Defendant's motion based on lack of subject matter jurisdiction should be denied.

### II. To Be Dismissed Under Rule 12(b)(6), ND PHP Has to Prove – on the Pleadings – it Operated in Good Faith

ND PHP takes their statutory affirmative defense and advances a motion under Rule 12(b)(6). The Eighth Circuit will affirm a dismissal under Rule 12(b)(6) if the complaint fails to allege facts sufficient to "state a claim to relief that is plausible on its face." *Hopkins v. City of Bloomington*, 774 F.3d 490, 491 (8th Cir. 2014) (citing *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) and *Walker v. Barrett*, 650 F.3d 1198, 1203 (8th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Twombly*, 550 U.S. at 570). It is not, however, a "probability requirement." *Id.* Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Braden*, 588 F.3d at 594 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 (quoting *Scheuer v. Rhodes,*416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974))).

Factual allegations contained in the complaint are assumed true. *Levy*, 477 F.3d at 991. The allegations are not constrained to just the facts alleged, but what can be

13

reasonably extrapolated from the allegations in the complaint. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hopkins*, 774 F.3d at 492 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). However, "[a] gallimaufry of labels, conclusions, formulaic recitations, naked assertions and the like will not pass muster." *Christiansen v. West Branch Cmty. Sch. Dist.*, 674 F.3d 927, 934, 33 IER Cases 932, 95 Empl. Prac. Dec. P 44453, 279 Ed. Law Rep. 43 (8th Cir. 2012) (citing *Twombly*, 550 U.S. at 555–557, 127 S.Ct. 1955). With that standard, Defendant argues that as a matter of law, Plaintiff cannot show that it failed to act in good faith, and it should be dismissed from this lawsuit.

Defendant spends much of its time arguing that its conduct satisfied the statutory requirements. However, whether actions were taken in good faith are not something that can be determined as a matter of law at the pleadings stage. "The determination whether a party acted in good faith under N.D.C.C. § 1-01-21 is a question of fact." *Farmers Union Oil Co. v. Smetana*, 2009 ND 74, 764 N.W.2d 665, 670 (N.D. 2009) (citing *Ballensky v. Flattum-Riemers*, 2006 ND 127, ¶ 27, 716 N.W.2d 110)). *See also Kmak v. Am. Century Cos.,* 754 F.3d 513, 517 (8th Cir. 2014) (overruling a district court's grant of a 12(b)(6) motion regarding a defendant's breach of good faith based on the plaintiff's allegations that defendant had retaliated against him, declining to consider the defendant's factual response.)

And Plaintiff's allegations – or facts that could be developed from Plaintiff's allegations – could lead a jury to find ND PHP did not act in good faith. N.D. Cent. Code

14

§ 1-01-21 defines good faith. "Good faith shall consist in an honest intention to abstain from taking any unconscientious advantage of another even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious." In order to find ND PHP acted in good faith, a jury – not this Court – has to determine ND PHP did all of their actions with an honest intention to abstain from taking any unconscientious advantage of Dr. Axelsson. *Id.* ND PHP cannot point to any presumption regarding good faith. See generally Def. Mem. If ND PHP wishes to avoid liability, it has to show it meets the criteria outlined in the statute. And the facts alleged in Plaintiff's complaint could certainly lead a jury to believe ND PHP did not conduct all of their actions with requisite good faith.

Plaintiff has alleged ND PHP has not participated in Dr. Axelsson's recovery from alcohol addiction in a way to facilitate her recovery, but has instead served to impede and obstruct her recovery and make false accusations. ¶ 58. She has also alleged ND PHP refused to modify her return-to-work recommendations in a manner that would have allowed her to return to work, despite Dr. Axelsson's providers uniformly recommending the changes and the contract stating ND PHP will base their approval upon recommendations from treatment providers. ¶ 71, 74, 75. Plaintiff has also alleged ND PHP reported failed breathalyzer test results to the North Dakota Board of Medicine even though ND PHP knew for a scientific certainty that she was not using alcohol. ¶ 76. Instead of contacting Dr. Axelsson to see what was going on and trying to help a doctor who had voluntarily entered their program (instead of the providers who usually are court or Board ordered to participate), ND PHP filed multiple complaints with Dr. Axelsson's

15

licensing board. ¶ 76-77. ND PHP knew or should have known the basis for their complaints was unfounded.

That UND and Sanford terminated Plaintiff's contract could have been the result of ND PHP's tortious interference. It could have been a result of ND PHP's defamatory statements it made to the North Dakota Board of Medicine. It could have been a result of ND PHP's breach of their monitoring agreement. Plaintiff does not know specifically, and has therefore pleaded alternative forms of relief. But alternative pleading is not just valid, it is encouraged, and Plaintiff is permitted the opportunity to develop her case based on the information she knows at the time of filing her complaint. Consequently, all of Plaintiff's claims should be permitted to proceed against ND PHP.

### III. Conflating ND PHP with the Board of Medicine is a red herring

It is axiomatic that when analyzing an unambiguous statute, the plain language applies. "If the statute is unambiguous we apply the plain language." *Luallin v. Koehler*, 2002 N.D. 80, 644 N.W.2d 591, 595 (N.D. 2002) (citing *State v. Hafner*, 1998 ND 220, ¶ 10, 587 N.W.2d 177). ND PHP argues it is essentially on the same footing as governmental agencies, and should enjoy the same statutory immunity as the State. However, a plain reading of the statutes shows the distinctions between ND PHP and actual arms of the state and local governments. By conflating itself with arms of the government, ND PHP seeks to convince the court that it is immune from any liability in this matter, despite there being no statutory language cited supporting that position. They attempt to equate their employees and their actions with those of state employees and cite NDCC §43-17.03-08.

16

But that's not what that statute provides. Far from it. There is a specific statute that provides such protections to state employees. See NDCC § 32-12.2-02(3) that specifically references the state or employees of the state not being liable for claims specified in that chapter. In contrast, NDCC §43-17.3-08 says nothing about these employees being treated the same as state employees and provides that ND PHP ". . .are not liable to any person for any acts, omissions, or recommendations <u>made in good faith</u> within the scope of responsibilities pursuant to this chapter." *Id* (emphasis supplied). In paragraph 2 of 43-17.3-08 the legislature put specific language in the statute that provides "A person that in good faith and without malice which makes a report to the physician health program or the board under this section is not liable to any person for that report." *Id*. That's it. There are no other provisions in the code about liability of ND PHP, its employees, or parties who make reports.

In contrast to the statute applicable to ND PHP, the legislature intentionally provided the Board of Medicine Investigative panel members immunity under NDCC §43-17.1-09, specifically and intentionally providing that "[m]embers of the investigative panels, special masters appointed by an investigative panel and agents of an investigative panel, are immune from any liability of any kind based upon any acts or omissions in the course of the performance of responsibilities in an official capacity except for bodily injury arising out of accidents caused, or contributed to, by the negligence of the member or agent." *Id*. There is no good faith requirement for the Investigative panel. There is only blanket immunity. *Id.*

17

The statute governing ND PHP does not grant ND PHP or its employees blanket immunity. It has a specific good faith requirement. ND PHP alleges that "[t]he language chosen by the North Dakota Legislature in protecting NDPHP from incurring any liability while carrying out its functions is clear and unambiguous. The statute provides that NDPHP is not liable to anyone for acts, omissions, or recommendations made in the good faith performance of its responsibilities." Def. Mem. p. 9. This statement is very nearly true. The statute is clear and unambiguous – but it does not prevent the ND PHP from incurring "any liability." It specifically requires a good faith element and for actions to be taken without malice on the part of the ND PHP, a portion of the statute which the ND PHP blatantly ignores. NDCC § 43-17.3-08. Had the legislature wanted to include blanket immunity, it could have done so. Because it did not, this Court cannot read it into the statute as ND PHP proposes. "Our duty is to fairly construe the language actually employed by the legislature, and from it determine the legislative intent." *Engstad v. Grand Forks Cnty.*, 10 N.D. 54, 84 N.W. 577, 578 (N.D. 1900). "Our primary objective in interpreting a statute is to ascertain the intent of the legislature by looking at the language of the statute itself and giving it its plain, ordinary, and commonly understood meaning." *Buchholz v. City of Oriska*, 2000 ND 115, 611 N.W.2d 886, 887 (N.D. 2000) (citing *Peterson v. Traill Co.,* 1999 ND 197, ¶ 10, 601 N.W.2d 268; N.D.C.C. §§ 1-02-02 and 1-02-03). Because the statute ND PHP relies upon requires them to operate in good faith, Plaintiff has alleged facts that could be determined by a jury to have been done in the absence of good faith, and because good faith in North Dakota is a fact question for the jury, Defendant's motion must be denied.

18

Neither does the case law provide Defendant any leg to stand on. ND PHP argues to this court at page 8 and 9 of its brief, and without specific language in NDCC §43-17.3-8 supporting its position, "[t]he North Dakota Supreme Court has routinely upheld state statutes that immunize certain claims and parties from lawsuits." ND PHP cites several cases where the state or governmental agencies were sued in trying to advance their argument that it is itself entitled to immunity. Def. Mem. p. 8-9. But those cases dealt with actual state agencies governed by statutes that provide actual immunity. For example, in the *Schroeder v. State* case in support but that case dealt with the state and state employees and their immunity as specifically set out in a wholly different statute, NDCC § 32-12.2-02(3), which states unequivocally, "Neither the state nor a state employee may be held liable under this chapter for any of the following claims:" and then lists the claims brought by the Schroeder family under subparts (f) and (i). *Schroeder v. State*, 946 N.W.2d 718, 721 (N.D. 2020). That statute did not provide factors that would permit liability, was not ambiguous, and did not require the State to prove good faith. Here, ND PHP does.

ND PHP is not a state entity entitled to immunity or the same protections as the legislature specifically provided for the state and state employees covered under NDCC §32-12.2-02. They've even admitted as much to this Court, filing its own Corporate Disclosure Statement that is required of every non-governmental entity. Doc 35; Fed. R. Civ. P. 7.1. ND PHP is not a state agency. It simply has a relationship with the Board of Medicine. A relationship with a state agency does not provide immunity. ND PHP's liability status is governed by § 43-17.3-8, and requires ND PHP to act in good faith to

19

avoid liability. Here, Plaintiff has alleged they have not acted in good faith. It is up to ND PHP to prove – to a jury, not this court – that it did act in good faith. That is the basis of litigation. Such a ruling, however, is not appropriate for a 12(b)(6) Motion to Dismiss. Consequently, Plaintiff requests this Court deny Defendant's Motion to Dismiss in its entirety.

## CONCLUSION

Because this Court has diversity jurisdiction over Plaintiff's claims against ND PHP, and because ND PHP cannot prove it acted in good faith in all of its dealings with plaintiff, Defendant's motion should be denied.

Dated this 15th day of June, 2022.

**FIEBIGER LAW, LLC**

by: s/Rolf T. Fiebiger
Thomas D. Fiebiger, ND ID # 04190
Rolf T. Fiebiger, MN ID #391138
6800 France Ave. S., Suite 190
Edina, MN 55435
612.399.6474
612.888.6084

Attorneys for Plaintiff Dr. Fiona Axelsson