EXHIBIT 1

# STAFF PHYSICIAN AGREEMENT
# BY AND BETWEEN

Sanford Clinic North, a nonprofit corporation (hereinafter called "Sanford")

## AND

Fiona Axelsson, MD (hereinafter called the "Physician").

## WITNESSETH:

WHEREAS, Sanford owns and operates physician offices and clinics; and

WHEREAS, Physician is a licensed physician capable of providing the services specified by this Agreement.

NOW THEREFORE, in consideration of the mutual covenants herein contained and intending to be legally bound hereby, the parties hereto agree as follows:

Section 1.  Employment

Sanford hereby employs Physician, and Physician hereby accepts such employment upon the terms and conditions set forth below.

Section 2.  Term

Physician's employment shall commence on July 11, 2022, or such other date as mutually agreed ("Commencement Date"), and shall continue for a period of three years unless terminated sooner as provided herein.  This Agreement shall be automatically extended for additional one-year terms unless either party notifies the other party in writing of its intent not to renew at least 90 days prior to the expiration of the then-current term.

Section 3.  Provision of Services by Physician

(a)     Physician is hereby employed by Sanford to provide medical services on a full-time basis (defined as a minimum of forty (40) hours per week of direct patient care) for patients of Sanford in Perham, Minnesota.   In addition to Physician's required minimum forty (40) hours per week of direct patient care, Physician shall also provide such administrative services related to direct patient care and devote time to teaching of medical students, residents, fellows or other scholarly activities for and as may be reasonably required by Sanford.

(b)     So long as Physician is so employed by Sanford, Physician will devote best efforts, skill and ability in performing said services.

(c)     Physician will acquire and maintain board certification in Physician's specialty as required by Sanford.

(d)     Physician will acquire and maintain in good standing, throughout the term of this Agreement, staff privileges at one or more Sanford hospitals to the extent required by Sanford.  Physician will consult with, and receive written approval from, Sanford prior to applying for staff privileges at any non-Sanford hospital, clinic or other medical facility.

(e)     Physician will acquire and maintain at all times during the term of this Agreement a license to practice medicine and to prescribe drugs and medication under all state, federal and local laws and regulations in effect in all jurisdictions where Physician may be required to practice under this Agreement.

(f)     This Agreement shall not affect the exercise of Physician's independent professional judgment in providing care to patients consistent with sound professional practice and the terms of this Agreement. This provision shall not affect the ability of Sanford to establish protocols, procedures, or standards for professional practice. Sanford shall also be entitled to engage in peer review, quality assurance review, and to make recommendations concerning the professional practice of Physician.

2

(g)     In all matters related to the discharge of responsibilities under this Agreement, Physician shall be accountable to Sanford's Council of Governors or its successor or designee.

(h)     Except when (i) the referral is not in the patient's best interest in the judgment of Physician; (ii) the patient expresses a preference for a different provider, practitioner, or supplier; or (iii) the patient's insurer determines the provider, practitioner, or supplier, Physician acknowledges and agrees that during the term of this Agreement he/she shall refer all of his/her patients to Sanford hospitals and to such non-hospital providers, practitioners, or suppliers as may be directed by Sanford.

(i)     Physician shall comply with all applicable bylaws, policies, rules, regulations and credentialing standards of Sanford and its subsidiaries or affiliates, including any corporate compliance policy or code of conduct now or hereafter adopted.  Physician shall provide all information required by the same and shall complete all clinic and hospital records in a timely and accurate manner and in accordance with applicable Sanford policies.

## Section 4.  Facilities and Personnel

Sanford shall furnish Physician with such space, equipment and personnel as may be deemed necessary or desirable by Sanford for the performance of Physician's duties hereunder.

## Section 5.  Professional Liability Insurance

(a)     Physician shall be solely responsible for any liability arising from any act or omission of Physician occurring prior to commencement of employment by Sanford, and for purchasing or arranging for professional liability insurance coverage with respect thereto.

(b)     Sanford will provide professional liability insurance coverage for Physician for services provided under this Agreement in such amounts as may be deemed

3

necessary or desirable by Sanford.  Said coverage shall extend to claims for damages made against Physician after termination of employment with Sanford so long as the claim arises from services provided by Physician pursuant to this Agreement, and Physician shall not be required to purchase an extended reporting endorsement ("tail") upon termination of this Agreement for such claims.  Professional liability coverage maintained by Sanford may be provided through Sanford's self-insurance program, captive insurer, insurance trust or through policies of insurance purchased by Sanford from commercial insurers, or any combination thereof.  Professional liability coverage for Physician will be subject to the limits, terms, exclusions and limitations applicable to Sanford's self-insurance program, captive insurer, insurance trust and/or any insurance policies purchased by Sanford.

Section 6.  Compensation

(a)    Physician's full compensation for all services rendered, in whatever capacity, will be determined by the compensation plan approved by Sanford.  Physician compensation will be reviewed annually.

(b)    Notwithstanding the foregoing, for the first year of this Agreement, Physician's rate of annual compensation will not be less than Two Hundred Fifty-Six Thousand and no/100 Dollars ($256,000.00) (the "Amount").

(c)



(d)

4

(e)

(f)

(g)



(h)



### Section 7.  Benefits

Subject to insurability rules and regulations, Physician shall be entitled to benefits as are generally provided to other similarly situated Sanford physicians pursuant to Sanford policies.

### Section 8.  Third-Party Reimbursement Programs and Assignment Agreements

Physician shall assign and reassign to Sanford or its designees all rights Physician may now or hereafter possess to receive income, payment and/or reimbursement for any and all professional medical services rendered by Physician pursuant to this Agreement, which shall also include any payments as a result of Physician's attestation of Meaningful Use during Physician's employment with Sanford.  Physician shall become and remain a participating provider in those public and private third-party reimbursement programs requested by Sanford.  As used in this Agreement, the term "third-party reimbursement program" shall include, but not be limited to, health maintenance organizations, preferred provider organizations, private health insurance companies, Sanford Health Plan, the federal Medicare program, and the state Medicaid program.  Under no circumstances shall Physician bill any patient or any public or

6

private third-party reimbursement program for any services for which Physician has been compensated pursuant to this Agreement. Any violation of any provision of this Section by Physician shall permit Sanford, at its option, to terminate this Agreement immediately.

## Section 9.  Confidentiality

Physician acknowledges that all patient charts, patient lists, and patient financial and demographic information concerning Sanford's practice are confidential, proprietary and constitute Sanford's trade secrets. Physicians may not access Sanford patient information or use Sanford patient lists to contact patients directly for solicitation purposes. Upon termination of this Agreement, Physician shall not use or disclose any confidential information, proprietary or trade secret information, including patient list and patient financial and demographic information concerning Sanford's practice, and shall maintain confidentiality with regarding to Sanford's business. Under no circumstances shall Physician remove patient medical records, x-rays, etc., or copies thereof, from Sanford's premises except as authorized under Sanford's policies when necessary for patient care. Physician shall complete all medical records prior to termination of this Agreement. Physician has no ownership interest in the medical records, x-rays, patient charts and other documents relating to the diagnosis and treatment of patients served by Sanford. Upon termination of Physician's employment with Sanford, Physician shall return all medical records and reports concerning patients and all copies thereof to Sanford. Physician agrees that Physician's obligations under this Section shall survive any termination of this Agreement. Additionally, you shall not directly disclose Sanford's compensation formula to any competitor of Sanford, nor shall you direct any individual or third party to disclose this information to a competitor on your behalf.

7

## Section 10.  Assignment

This Agreement may not be assigned by either party without the express written consent of the other party; provided, however, Sanford may assign this Agreement to its parent, subsidiaries, or corporate affiliates without consent.

## Section 11.  Modification

This Agreement may not be orally canceled, changed, modified or amended, and no cancellation, change, modification or amendment shall be effective or binding, unless in writing and signed by both parties to this Agreement.

## Section 12.  Termination

(a)   Notwithstanding any of the provisions of this Agreement, either party may terminate this Agreement by giving 90 days' written notice to the other party.  If Sanford elects to terminate under this Section, it may, at its option, give Physician 90 days' base pay in lieu of notice.

(b)   Sanford may also terminate Physician's employment immediately (without severance pay) in the event:

   i)   Physician fails to substantially perform Physician's obligations under this Agreement (as reasonably assigned or reasonably appropriate to Physician's role hereunder) and such failure is not cured to the satisfaction of Sanford within thirty (30) days after written notice thereof is given to Physician;

   ii)   Physician fails to maintain medical staff appointment or clinical privileges at any organization where Physician has provided professional services;

   iii)   Physician engages in any unethical conduct or medical misconduct as defined by State and National Medical Associations and such failure remains uncorrected after fifteen (15) days of written notice from Sanford;

8

iv)     Physician is suspended or excluded from participation in the Medicare program or any other Federal Health Program;

v)     Sanford is unable to obtain malpractice insurance on behalf of Physician, or if the cost of obtaining such insurance unreasonably exceeds the cost of obtaining such insurance for other physician employees working within the same specialty;

vi)     Physician's professional practice presents a direct threat to the safety of patients or employees, including situations in which Physician's abuse of alcohol or drugs poses a direct threat to patient or employee safety;

vii)     Physician fails to maintain the standard of competence reasonably deemed necessary by Sanford;

viii)     Physician is deemed to have engaged in a material violation of Sanford policy regarding patient or employee rights after investigation;

ix)     Physician repeatedly violates or continues to violate, after notice, any of Sanford's policies or directives and such failure remains uncorrected after fifteen (15) days of written notice from Sanford;

x)     Physician is absent from work beyond the period authorized by applicable Sanford policies;

xi)     Physician commits fraudulent or dishonest acts which involve the practice of medicine;

xii)     Physician engages in any felonious act, or misdemeanor involving moral turpitude (as defined by state or federal law) in connection with Physician's employment;

xiii)     Physician is convicted of, pleads guilty or nolo contendere to any felony, or misdemeanor involving fraudulent conduct or moral turpitude (as defined by applicable state or federal law); or,

xiv)     Physician fails to maintain any license or certification required to provide services under this Agreement.

9

(c)     Upon termination of this Agreement for any reason, Physician agrees that Sanford may, at its sole discretion and without demand and without notice, set off any liability owed to Physician by Sanford, including compensation hereunder, against any obligation owed by Physician to Sanford or its affiliates, including obligations evidenced by the Promissory Note referenced above.

(d)     Physician acknowledges and agrees that his/her medical staff appointment and clinical privileges at one or more Sanford owned or leased hospital(s) shall automatically expire upon termination of this Agreement.  As prescribed by the medical staff bylaws of said Sanford hospital(s), such automatic expiration (i) would not give rise to hearing and appeal rights and (ii) would not constitute a professional review action adversely affecting the clinical privileges of Physician.  For purposes of this Section 12(d), said Sanford hospital(s) shall be deemed third-party beneficiaries to this Agreement.

Section 13.  Strict Performance

No failure by either party to insist upon the strict performance of any covenant, agreement, term or condition of this Agreement or to exercise a right or remedy shall constitute a waiver.  No waiver of any breach shall affect or alter this Agreement, but each and every covenant, condition, agreement and term of this Agreement shall continue in full force and effect with respect to any other existing or subsequent breach.

Section 14.  Entire Agreement

As of the Commencement Date, this Agreement represents the entire Agreement between Sanford and Physician with respect to the subject matter hereof, and all prior agreements, including but not limited to any per diem employment agreement or professional services agreement, relating to the employment of Physician written or oral, are nullified and superseded hereby and neither party shall have any further rights or obligations under such superseded agreements.  Each party releases the other from

10

all claims of any kind or nature arising from such superseded agreements.  No change or addition to, or deletion of, any portion of this Agreement shall be valid or binding upon the parties hereto unless the same is approved in writing by the parties.

## Section 15.  Invalidity or Unenforceability of Particular Provisions

The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

## Section 16.  Release of Information

Physician acknowledges that Sanford will release information related to any aspect of Physician's practice to third parties as authorized by law (including state agencies).  Further, Physician authorizes Sanford to release to applicable state board of medical examiners, any governmental or private insurer, hospital, health maintenance organization, self-insured employer or any other organization with which Sanford contracts to provide health care services, information relating to any aspect of Physician's practice, including, without limitation, information relating to professional liability claims, disciplinary proceedings, utilization, and quality review.  Physician authorizes any educational institution, hospital, clinic, government or private insurer, or other health care institution to release to Sanford all employment files, disciplinary records, and other documents relating to Physician's conduct or performance. Sanford will provide Physician the reasonable opportunity to review requests for information related to professional liability or disciplinary matters prior to release of any information.

## Section 17.  Proprietary Information, Trade Secrets and Intellectual Property

(a)     Sanford acknowledges and agrees that it shall have no right, title or interest in or to any intellectual property (whether patentable, copyrightable or not) which was registered, copyrighted or for which patents were filed or issued,  prior to

11

Physician's employment with Sanford ("Physician Intellectual Property").

(b)    If and to the extent Physician develops intellectual property while employed by Sanford, but does not utilize Sanford resources (including Sanford staff, funds, facilities, equipment or material resources or while actively engaged in the performance of Physician services under this Agreement) to develop the intellectual property, such intellectual property shall be deemed Physician Intellectual Property under this Agreement.  Sanford hereby waives any ownership rights, title or interest it may be deemed to have in and to Physician Intellectual Property, and hereby assigns all right, title and interest in and to Physician Intellectual Property to Physician; provided, however, Physician grants to Sanford a non-exclusive, worldwide, paid-up, royalty-free, perpetual license to use that Physician Intellectual Property developed by Physician during Physician's employment with Sanford, for its own internal use only (including without limitation, research, development and educational purposes) and not for resale.

(c)    Physician agrees to promptly disclose in writing to Sanford all intellectual property including, without limitation, discoveries, improvements, formulas, techniques, know-how, writings, drawings, software, mask works, and other inventions and works of authorship (whether or not patentable or copyrightable) made, conceived, discovered, written, created, learned of or reduced to practice by Physician during the period of his/her employment with Sanford, which relate or result from the actual or anticipated business of Sanford or from the use of Sanford's staff, funds, equipment, premises, property, or which constitute a work made for hire ("Sanford Intellectual Property").  Physician hereby waives any ownership rights, title or interest he/she may be deemed to have in and to Sanford Intellectual Property, and hereby assigns all right, title and interest in and to Sanford Intellectual Property to Sanford.  Physician shall cooperate with Sanford to enable Sanford to obtain, maintain or enforce patents, copyrights, or other legal protection for such intellectual property, including the execution of

12

any and all documentation necessary to evidence the transfer/assignment of ownership of Sanford Intellectual Property to Sanford.

(d)     Any distribution of net income derived from commercialization of Sanford Intellectual Property developed by Physician, subject to applicable restrictions arising from any grants, contracts or other agreements with outside parties, shall be as follows:

    (i)      Physician:   50% (may be shared with others at Physician's discretion)

    (ii)     Sanford:      50%

"Net Income" shall be defined as gross revenue, as identified in the totality of the legal documents reflecting the transaction, less all costs incurred by Sanford or its agent(s) in commercializing the Sanford Intellectual Property and in obtaining and maintaining intellectual property protection.  The amount of net income distributed to Physician will not be affected by termination of Physician's employment with Sanford.

(e)     Notwithstanding the foregoing, Physician agrees to comply with the then-current intellectual property policy of Sanford and its affiliates.  In the event of a conflict between this Agreement and such policy, Physician and Sanford agree that the then-current intellectual property policy will control.

## Section 18.  Governing Law

This Agreement shall be construed and enforced under and in accordance with the laws of Minnesota, with exclusive venue for resolution of disputes in the State District Court in and for Pennington County.

## Section 19.  No Third-Party Rights

Except as may be expressly provided herein, nothing in this Agreement shall be construed as creating or giving rise to any rights in any third parties or any persons other than the parties hereto.

Section 20.  Pre-Employment Post-Offer Background Check, Drug Screen, Licensure, and Privileges

Physician and Sanford acknowledge and agree that all obligations of each party hereunder shall be subject to the satisfaction of the following conditions precedent as of the Commencement Date:

(a)     Physician satisfactorily completes a background check and drug screen in accordance with Sanford policy;

(b)     Physician is granted licensure to practice medicine from the state of Minnesota;

(c)     Physician obtains medical staff appointment and clinical privileges commensurate with the services to be performed hereunder at Perham Health;

(d)     Physician obtains from Sanford Health Plan in-network status with clinical privileges commensurate with the services to be performed hereunder; and

(e)     Physician is accepted into Sanford's standard professional liability policy by Sanford's insurance carrier.

Section 21.  Non-Competition

Physician covenants and agrees that:

(a)     Non-Competition.  So long as Physician is receiving any compensation from Sanford and for a period of two years thereafter, Physician shall not, without the prior written consent of Sanford, directly or indirectly, as an employee, employer, agent, owner, principal, proprietor, partner, investor, stockholder, consultant, director or corporate officer or otherwise, engage in any business or render any services to any business that is in direct competition with the business of Sanford or any of its affiliates, including, but not limited to, the practice of medicine within a twenty (20) mile radius of any office where Physician provided medical services pursuant to this Agreement.

(b)     Modification.  If the scope of any restrictions contained in Section 21(a) are judicially determined to be too broad to permit enforcement of such restrictions to their full extent, then such restrictions shall be enforced to the maximum extent permitted by law, and Physician hereby consents and agrees

14

that such scope may be modified accordingly in any proceeding brought to enforce such restrictions.

(c)     <u>Acknowledgment</u>.  Physician acknowledges that Physician will receive proprietary information of Sanford during the course of employment which would be of economic value to a competitor such that it would be unfair for Physician to violate the terms of this Section 21.  Physician further agrees that the terms of this Section 21 are reasonable and necessary to protect the legitimate business interests of Sanford and this Section 21 may be enforced by Sanford by injunction regardless of any claim that Physician may now or hereafter assert against Sanford.

<u>Section 22.  Representations</u>

(a)     Physician represents and warrants that all of the information and documentation which Physician has provided to Sanford is true, accurate and complete in all material respects and does not omit any material information necessary to make the information or documentation provided to Sanford not misleading.

(b)     Physician represents and warrants that this Agreement and Physician's employment hereunder will not constitute a default or breach of any covenant or agreement to which Physician is a party and that Physician is not bound or restricted by any contract of employment, non-competition agreement, confidentiality or non-disclosure agreement, or any other agreement with a present or former employer or other third party that would conflict with this Agreement or Physician's employment with Sanford.

(c)     Physician represents and warrants that Physician will not use any privileged information, trade secrets or other intellectual property belonging to any third party while performing services for Sanford.

15

Section 23.  Survival

Any provisions hereof that by their nature would be expected to survive the termination of this Agreement shall survive and not be affected by said termination.

Section 24.  Construction of Headings

The captions or headings are for convenience only and are not intended to limit or define the scope or effect of any provision of this Agreement.

Section 25.  Physician Immigration Responsibilities

Sanford and Physician agree that the parties' obligations under this Agreement are contingent upon Physician obtaining all necessary United States immigration documents and status enabling Physician to work in Perham, Minnesota and to provide medical services under this Agreement in the specialty of Family Medicine.  This Agreement shall be null and void if Physician is unable to obtain the necessary approval and status from the United States government to reside in the United States and be employed by Sanford as of the Commencement Date, or such other date as may be approved by Sanford in its discretion.

Upon Physician's signing of this Agreement and while Physician remains employed by Sanford, Sanford agrees to sponsor Physician for visa(s) necessary for Physician to work for Sanford at the location(s) designated by Sanford, and if requested by Physician and authorized by law, Sanford will sponsor Physician for permanent residence; provided, however, Sanford shall cease all immigration sponsorship and petitions upon termination of this Agreement.  Sanford shall designate internal legal personnel that shall be used to prepare and file all immigration petitions and documents related to immigration proceedings in which Sanford is the sponsor, applicant or petitioner.  Sanford agrees to pay any filing fees related to Physician obtaining the required immigration documentation and status necessary to commence employment for Sanford, and permanent residence, as noted in this Section 25.

16

Physician agrees to cooperate with Sanford's designated legal counsel, which shall represent Sanford in the immigration process and not Physician.  Physician may engage independent counsel to monitor or provide independent advice to Physician throughout the immigration process, but Physician shall be solely responsible for any attorney's fees or costs related to engagement of independent counsel.  Physician shall also be solely responsible for any attorney's fees, costs and filing fees associated with non-work related travel.

Section 26.  J-1 Waiver

Physician agrees to begin employment with Sanford within ninety (90) days of receiving a waiver of the two-year foreign residence requirement associated with his/her J-1 nonimmigrant visa status; and Physician agrees to continue to work for a total of not less than three (3) years thereafter (unless the Attorney General determines that extenuating circumstances exist, such as closure of the facility or hardship to Physician, which would justify a lesser period of employment at Sanford); and Physician agrees to perform professional medical services for a minimum of forty (40) hours per week either in a geographic area which is designated by the Secretary of Health and Human Services as being a Health Professional Shortage Area (HPSA) and/or a Medically Underserved Area (MUA) and/or a Medical Underserved Population (MUP), or within or outside of the HPSA/MUA/MUP geographic areas pursuant to a flexibility waiver recommended by the State Department of Health.  Nothing in this Section 26 shall be construed as creating a contract of employment for a definite term.  Either party is free to terminate this Agreement in accord with Section 12 at any time.

17

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year last written below.

**SANFORD CLINIC NORTH**

DATE:_____     BY:_____

DATE: 10/23/2020

Fiona Axelsson, MD

18

DEMAND NOTE FOR
INCENTIVE LOAN
PER PHYSICIAN AGREEMENT

$100,000.00                                                           Oct 23, 2020

    After date, for value received, I promise to pay to the order of Sanford Clinic North, the sum of One Hundred Thousand and 00/100ths Dollars ($100,000.00) or such lesser amount as advanced to the undersigned pursuant to the STAFF PHYSICIAN AGREEMENT of even date herewith, to be repaid ON DEMAND, or if no demand is made, in 48 monthly installments with interest thereon at the "prime rate" as published in the Wall Street Journal on the date of execution plus one percent, beginning on the first day of the first month following the Commencement Date, in accordance with the STAFF PHYSICIAN AGREEMENT dated Oct 23, 2020

    Should any of the principal not be paid when due, such default shall, at the option of the legal holder hereof, cause all sums then remaining unpaid to become immediately due and payable, without notice (notice of the exercise of such option being hereby expressly waived).

    The Maker, endorsers, sureties and guarantors hereof hereby severally agree to pay all expenses of collection, including attorney's fees, in case payment shall not be made at maturity, and severally waive presentment for payment, notice of non-payment, protest and notice of protest and diligence in enforcing payment or bringing suit against any party hereto, the endorsers, sureties and guarantors hereof hereby severally consent that the time of payment may be extended, or this note renewed, from time to time without notice to them and without affecting their liability hereon. The Maker agrees that Sanford Clinic North may, at its sole discretion and without demand and without notice to anyone, set off any liability owed to the Maker by Sanford Clinic North, including any wage or other obligation and whether or not due, against any obligation owed by the Maker to Sanford Clinic North or its affiliates, including the obligations of Maker evidenced by this NOTE. The payment obligations arising under this NOTE are subject to the terms of the STAFF PHYSICIAN AGREEMENT entered into by the Maker and Sanford Clinic North on Oct 23, 2020 including, without limitation, the debt forgiveness provisions set forth in Section 6(g) thereof.

    MAKER AGREES THAT ANY CLAIM OR DEMAND (OF DEFAULT OR OTHERWISE) WHICH MAKER MAY HAVE OR ASSERT AGAINST SANFORD CLINIC NORTH OR ITS AFFILIATED ENTITIES WILL NOT EXCUSE OR DELAY PAYMENT OF THIS NOTE AS PROVIDED HEREIN, AND MAKER HEREBY WAIVES ANY RIGHT OF SETOFF.

MAKER: Fiona Axelsson, MD
SSN: 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

STATE OF ND )
      : SS
COUNTY OF Cass )

    On this the 23 day of October, 2020, before me, a Notary Public within and for said County, personally appeared Fiona Axelsson, MD, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he/she executed the same as his/her free act and deed.

(SEAL)

STEFANI LEGRAND
Notary Public
State of North Dakota
My Commission Expires Sept 4, 2023

Stefani Legrand
Notary Public, State of ND
My Commission expires: 9/4/23