**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| Dr. Fiona Axelsson,<br><br>                         Plaintiff,<br><br>     vs.<br><br>University of North Dakota School of Medicine and Health Sciences, Sanford, Sanford Health, and North Dakota Professional Health Program,<br><br>                 Defendants. | **ORDER**<br><br>Case No. 3:22-cv-00056 |

      Before the Court is Defendant North Dakota Professional Health Program's ("NDPHP") motion to dismiss counts XXV (tortious interference with contract), XXVI (breach of contract), and XXVII (defamation) of Plaintiff Dr. Fiona Axelsson's amended complaint (Doc. No. 23) pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Doc. Nos. 27-29. Axelsson opposed the motions (Doc. No. 36), and NDPHP filed a reply. Doc. No. 37. For the reasons set forth below, the motion is granted with respect to the breach of contract claim and denied as to the tortious interference with contract and defamation claims.

## I.    <u>BACKGROUND</u>

      The factual background, which the Court must accept as true for the purposes of this motion, is taken from the amended complaint. <u>See</u> Doc. No. 23. In her amended complaint, Axelsson asserts various claims arising under Title VII of the Civil Rights Act of 1964, the Americans with Disability Act (the "ADA"), the North Dakota Human Rights Act (the "NDHRA"), and other federal employment and civil rights statutes, in addition to various state law claims. <u>Id.</u> ¶¶ 99-152. In general, these claims arise from the alleged sexual harassment of Axelsson by her program supervisor, alleged retaliatory and discriminatory conduct by Axelsson's

former employers, Defendant University of North Dakota School of Medicine and Health Sciences ("UND") and Defendant Sanford Health ("Sanford"), and, as relevant to this motion, NDPHP's actions and oversight of Axelsson pursuant to a monitoring agreement and her alleged non-compliance with the agreement. Id. ¶¶ 17, 58-62, 76, 87-88, 97-101.  Axelsson alleges that the actions by the Defendants prevented her "from returning to work as a resident physician at UND/Sanford . . .." Id. ¶ 102. She further alleges diversity jurisdiction based on her Canadian citizenship, the Defendants' North Dakota citizenship, and her position that her claims satisfy the $75,000 threshold necessary for diversity jurisdiction. Id. ¶¶ 6-7, 12.

Axelsson was a participant in the family medicine residency program sponsored by UND, and worked at a clinic in Fargo, North Dakota that was operated by Sanford. Id. ¶¶ 11, 13-14. Axelsson began participating in UND's residency program in 2019 pursuant to an employment contract. Id. ¶ 11. UND and Sanford have a contractual agreement, where the resident physicians work for Sanford.  Id. ¶¶ 13-14.

During her residency, Axelsson struggled with mental health issues that she argues were the result of being sexually harassed by her residency program director. Id. ¶¶ 53-57. In April 2021, Axelsson sought, and took, an approved medical leave to address her mental health issues and to seek treatment for chemical health concerns. Id. ¶ 56. At the same time, Axelsson contacted NDPHP and enrolled in the physician health program for substance use and mental health disorders. Id. ¶¶ 59-62. As part of her participation in the program, Axelsson entered into a monitoring agreement with NDPHP and agreed to be tested for drugs and alcohol. Id. ¶ 60. Axelsson alleges she fully complied with the program's requirements and was cleared to return to work in the fall of 2021. Id. ¶ 62.

However, despite her alleged compliance, Axelsson further alleges that NDPHP refused to modify her return-to-work recommendations in a timely manner that would have allowed her to return to her prior employment. Id. ¶¶ 71, 74-75. Specifically, she states NDPHP refused to modify her return-to-work recommendations, despite her providers uniformly recommending the changes. Id. She further alleges that NDPHP filed multiple erroneous complaints about her use of alcohol with the state licensing board, despite having knowledge that the allegations in these complaints were untrue. Id. ¶ 76-77. Axelsson alleges NDPHP's actions gave Sanford and UND a pretextual reason to end her employment, despite the true motive being retaliation for reporting the sexual harassment she experienced. Id. ¶ 88.

## II.   LAW AND ANALYSIS

NDPHP moves for dismissal of count XXV (tortious interference with contract), count XXVI (breach of contract), and count XXVII (defamation). As a threshold issue, NDPHP argues the Court lacks subject matter jurisdiction to entertain any of these claims due to the lack of diversity jurisdiction. Alternatively, NDPHP argues the three claims should be dismissed for failure to state a claim upon which relief can be granted. Axelsson argues that the requirements of diversity jurisdiction have been met and that each of the three claims contain sufficient factual allegations to defeat this motion to dismiss. For the most part, the Court agrees with Axelsson. However, on this amended complaint and only as to NDPHP, the Court cannot conclude that Axelsson has stated a plausible claim for breach of contract, and that claim is dismissed.

### A.    Subject Matter Jurisdiction

NDPHP moves for dismissal for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  The amended complaint invokes diversity jurisdiction as the basis for subject matter jurisdiction.  In its jurisdictional challenge, NDPHP argues (1) NDPHP is

statutorily immune from liability, and (2) the amount of damages in question is too speculative to meet the $75,000 amount in controversy requirement.

Federal courts must possess jurisdiction before reaching the merits of a case. Va. House of Delegates v. Bethune-Hill, 587 U.S. ___, 139 S. Ct. 1945, 1950 (2019). "Federal court diversity jurisdiction of state law claims requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants." Onepoint Solutions, LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007) (citing 28 U.S.C. § 1332(a)). "Whether a plaintiff satisfies the $75,000 amount in controversy requirement is a jurisdictional issue for the court to decide." Krenz v. Xto Energy Inc., 770 F.Supp.2d 1011, 1014 (D. N.D. 2011) (citing Nagel v. Wal-Mart Stores, Inc., 319 F.Supp.2d 981, 983 (D. N.D. 2004) and Trimble v. Asarco, Inc., 232 F.3d 946, 959 (8th Cir. 2000)). "Typically, complaints need only allege the jurisdictional amount in good faith and will be dismissed only if it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" Am. Family Mut. Ins. Co. v. Vein Ctrs. For Excellence, Inc., 912 F.3d 1076, 1080-81 (8th Cir. 2019).

As an initial matter, NDPHP does not challenge the diversity of citizenship between the parties and focuses instead on the amount in controversy.[1]  NDPHP's first argument is that North Dakota Century Code section 43-17.3-08 provides blanket immunity, which means Axelsson cannot recover at least $75,000 against NDPHP.  North Dakota Century Code section 43-17.3-08(1) states:

> Notwithstanding any other provision of law, the board, the physician health program, committee or designated agency, or delegated individuals and members of any of these entities are not liable to any person for any acts, omissions, or recommendations made in good faith within the scope of responsibilities pursuant to this chapter.

---

[1] Though the Court notes for the record that diversity of citizenship is present as the NDPHP is a North Dakota entity and Dr. Axelsson is a Canadian National.

4

(Emphasis added). The "primary objective in interpreting a statute is to ascertain the intent of the legislature by looking at the language of the statute itself and giving it its plain, ordinary, and commonly understood meaning." Buchholz v. City of Oriska, 2000 ND 115, 611 N.W.2d 886, 887 (N.D. 2000) (citing N.D.C.C. §§ 1-02-02, 1-02-03). While there has not been any caselaw developed regarding this statute that is cited by either party, or that could be located by the Court, a plain reading supports the conclusion that any immunity for NDPHP's actions is contingent on those actions being taken in good faith. North Dakota law defines "good faith" as follows:

> Good faith shall consist in an honest intention to abstain from taking any unconscientious advantage of another even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious.

N.D. Cent. Code § 1-01-21. "The determination whether a party acted in good faith under N.D.C.C. § 1-01-21 is a question of fact." Farmers Union Oil Co. v. Smetana, 2009 ND 74, 764 N.W.2d 665, 670 (N.D. 2009).

In the amended complaint, Axelsson specifically alleges NDPHP's actions were not taken in good faith. Notably, she alleges that, despite her compliance with all requirements, NDPHP refused to modify her return-to-work recommendations in a timely manner that would have allowed her to return to her prior employment. Doc. No. 23 ¶¶ 71, 74, 75. Axelsson further alleges NDPHP refused to modify her return-to-work recommendations despite her providers uniformly recommending changes to the monitoring agreement. Id.  And she alleges NDPHP reported multiple failed breathalyzer test results to the North Dakota Board of Medicine, even though it was aware that she was not using alcohol. Id. ¶ 76.  On these specific allegations, including the allegations that NDPHP did not act in good faith, North Dakota Century Code section 43-17.3-08(1) does not provide blanket immunity to NDPHP.

With the statutory immunity question resolved, the next question is whether the $75,000 amount in controversy requirement is met.  As noted by NDPHP, under North Dakota law, the measure of damages for tortious interference with contract "is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." N.D. Cent. Code § 32-03-20. Similarly, the measure of damages for a defamation claim is generally the economic harm caused to the reputation of the person defamed. See Forster v. W. Dakota Veterinary Clinic, Inc., 2004 ND 207, ¶ 23, 689 N.W.2d 366, 378. In short, the damages for the claims alleged against NDPHP would generally be the amount necessary to compensate Axelsson for the harm that it caused.

Here, the $75,000 threshold is met. The amended complaint alleges Axelsson sustained significant lost earnings and potential future earnings and benefits. Doc. No. 23 ¶ 88. The difference between her current salary and the salary she would have received—but for the alleged tortious interference and defamation of NDPHP—is over $75,000 and meets the requirement for diversity jurisdiction. And notably, this is only the difference in salary for one year; if ultimately successful with her claim, it would be up to the jury to determine the amount necessary to properly compensate Axelsson. As a result, the amount in question is not too speculative for the Court to determine that the amount in controversy satisfies the threshold for diversity jurisdiction. Accordingly, NDPHP's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is denied.

### B.      Federal Rule of Civil Procedure 12(b)(6)

Beyond its challenge to subject matter jurisdiction, NDPHP moves to dismiss Axelsson's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6).  Federal Rule of Civil Procedure 8(a) requires a pleading only to contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." Nevertheless, a complaint may be dismissed for "failure to state a claim upon which relief can be granted," and a party may raise that defense by motion. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff must show that success on the merits is more than a "sheer possibility." Id.

> Plausibility is established when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Threadbare recitals supported by conclusory statements, however, do not suffice to meet the plausibility requirement.

Brookins Hybrid Drive Sys., LLC v. M.A.C., Inc., 3:12-CV-101, 2013 WL 12086636, at *2 (D.N.D. May 2, 2013). A complaint does not need detailed factual allegations, but it must contain more than labels and conclusions. Bell Atl. Corp. v. Twombly, 551 U.S. 544, 555 (2007).

As noted above, the Court must accept all factual allegations in the complaint as true, except for legal conclusions or "formulaic recitation of the elements of a cause of action." Iqbal, 556 U.S. at 681. The determination of whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Wilson v. Ark. Dep't of Hum. Servs., 850 F.3d 368, 371-72 (8th Cir. 2017). The burden is on the moving party to prove that no legally cognizable claim for relief exists.

### 1.    Statutory Immunity.

NDPHP first renews its argument that it is statutorily immune from liability. As discussed above, however, North Dakota Century Code section 43-17.3-08 provides immunity for NDPHP "for any acts, omissions, or recommendations made in good faith within the scope of

responsibilities pursuant to this chapter." Again, Axelsson has alleged that NDPHP's actions were not taken in good faith, and NDPHP's competing narrative that its actions were taken in good faith is insufficient to grant a motion to dismiss under Rule 12(b)(6).  Accepting the allegations in the amended complaint as true, the Court cannot conclude NDPHP is immune from liability under North Dakota Century Code section 43-17.3-08.

### 2.    Tortious Interference with an Existing Contract.

Next, NDPHP moves to dismiss the claim for tortious interference with an existing contract. North Dakota recognizes this claim. See, e.g., Messiha v. State, 1998 ND 149, ¶ 10, 583 N.W.2d 385; Tracy v. Central Cass Pub. Sch. Dist., 1998 ND 12, ¶ 9, 574 N.W.2d 781. To establish a prima facie case of tortious interference with a contract, the plaintiff must prove "(1) a contract existed, (2) the contract was breached, (3) the defendant instigated the breach, and (4) the defendant instigated the breach without justification." Hilton v. North Dakota Educ. Ass'n., 2002 ND 209, ¶ 24, 655 N.W.2d 60. "Wrongful interference with contractual rights, whether such interference induces or prevents a third person to refrain from forming a contract, or induces such person to break an existing contract, will render the person whose wrongful conduct is responsible for these results liable in damages to the party injured." Trade 'N Post, L.L.C. v. World Duty Free Americas, Inc., 2001 ND 116, ¶ 33, 628 N.W.2d 707.

As argued by NDPHP, Axelsson cannot show "under any set of facts" that NDPHP's decision-making with respect to her monitoring agreement amounted to unjustifiable interference with her employment contract. Axelsson argues she has alleged bad faith conduct by NDPHP, which caused her employer to breach her employment contract. As relevant to this claim, Axelsson alleges that an employment contract existed between herself and UND, and that this contract was breached due to the retaliatory nature of the termination of her employment. She further alleges

8

NDPHP's failure remove the chaperone requirement of her monitoring agreement in a timely manner and false characterizations of failed breathalyzer tests were not justified and that these actions led to the alleged breach of her employment contract.

Without a doubt, there are several open fact questions concerning the timing of events and information known to NDPHP at the time.  However, the sole question to resolve in deciding a motion to dismiss pursuant to Rule 12(b)(6) is whether the amended complaint contains sufficient factual allegations to plausibly allege that NDPHP tortiously interfered with the existing contract between Axelsson and UND.  And here, it does.  Notably, Axelsson alleges a contract existed between her and UND, and NDPHP's unjustifiable actions, or failures to act, instigated the breach of that contract.  Doc. No. 23 ¶¶ 76-77, 97-102.  As a result, taking as true the allegations in the amended complaint, Axelsson has alleged sufficient facts to plausibly state a claim for tortious interference with an existing contract.  Accordingly, the motion to dismiss the tortious interference claim is denied.

### 3.     Breach of Contract.

NDPHP further argues Axelsson's claim for breach of contract should be dismissed. A breach of contract is the nonperformance of a contractual duty when it is due. Bakke v. Magi-Touch Carpet One Floor & Home, Inc., 2018 ND 273, ¶ 13, 920 N.W.2d 726, 731 (citing Restatement (Second) of Contracts § 235(2) (1981)). The elements of a prima facie case for breach of contract are: (1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach. Serv. Oil, Inc. v. Gjestvang, 2015 ND 77, ¶ 15, 861 N.W.2d 490, 496.

Neither party disputes that the monitoring agreement between Axelsson and NDPHP was a contract.  However, Axelsson has not plausibly alleged that NDPHP breached the monitoring agreement. Significantly, Axelsson did not identify what provision of the agreement was breached,

and she did not attach the monitoring agreement to the amended complaint. NDPHP did attach a copy of the agreement as a part of its briefing. Doc. Nos. 40-2, 40-3, and 40-5. The Court may review a contract that is embraced by the substance of the complaint as part of a Rule 12(b)(6) motion. See Enervations, Inc. v. Minn. Min. & Mfg. Co., 380 F.3d 1066, 1069 (8th Cir. 2004). After reviewing the monitoring agreement, the Court has been unable to determine what provision of the contract Axelsson is alleging NDPHP breached.

Axelsson seems to argue that NDPHP generally breached the contract by failing to facilitate her rehabilitation. Doc. No. 23 ¶ 74. Setting aside the general nature of this alleged breach, the monitoring agreement contains no such express obligation. Instead, Axelsson attempts to shoehorn a statement from NDPHP's website (namely, "[t]he approval for a return to practice is based on recommendations from treatment providers.") into the monitoring agreement. It is well-settled that evidence outside an unambiguous contract cannot be considered to supplement or create additional terms. Citizens State Bank–Midwest v. Symington, 2010 ND 56, ¶ 19, 780 N.W.2d 676; Golden Eye Res., LLC v. Ganske, 2014 ND 179, ¶ 17, 853 N.W.2d 544, 551. As a result, even when taking every allegation asserted by Axelsson as true, she has failed to identify any provision of the monitoring agreement that was plausibly breached by NDPHP. Accordingly, the claim for breach of contract as to NDPHP warrants dismissal, and the claim is dismissed without prejudice.

### 4. Defamation.

Finally, NDPHP moves to dismiss Axelsson's defamation claim. Under article I, section 4 of the North Dakota Constitution, every person "may freely write, speak and publish his opinions on all subjects, being responsible for the abuse of that privilege." See, e.g., Moritz v. Medical Arts Clinic, P.C., 315 N.W.2d 458, 459 (N.D. 1982). Every person has a right to be protected from

defamation, which is classified as either libel or slander under North Dakota Century Code section 14–02–02. See Bertsch v. Duemeland, 2002 ND 32, ¶ 11, 639 N.W.2d 455; Jose v. Norwest Bank, 1999 ND 175, ¶ 23, 599 N.W.2d 293.  Libel is "a false and unprivileged publication by writing . . . which has a tendency to injure the person in the person's occupation." N.D. Cent. Code § 14–02–03. A publication generally must be false to be defamatory. Bertsch, 2002 ND 32  at ¶ 11; Jose, ¶ 24; Eli v. Griggs County Hosp. and Nursing Home, 385 N.W.2d 99, 101 (N.D.1986); Meier v. Novak, 338 N.W.2d 631, 635 (N.D.1983). See N.D. Const., art. I, § 4 ("In all civil and criminal trials for libel the truth may be given in evidence, and shall be a sufficient defense when the matter is published with good motives and for justifiable ends."). Statements that are "technically true" on their face, however, may constitute civil libel if they use innuendo, insinuation, or sarcasm to convey an untrue and defamatory meaning. Mr. G's Turtle Mountain Lodge, 2002 ND 140, ¶ 33, 651 N.W.2d 625; Moritz v. Medical Arts Clinic, P.C., 315 N.W.2d 458, 460 (N.D. 1982).

Axelsson alleges NDPHP made defamatory statements about her breathalyzer tests to the North Dakota Board of Medicine. NDPHP argues, among other things, that any communications to the North Dakota Board of Medicine regarding Dr. Axelsson were true and therefore not defamation as a matter of law. The Court notes that the allegations in the amended complaint that apply to the defamation claim are as follows:

> On March 30, 2022, ND PHP sent a letter to the North Dakota Board of Medicine accusing Dr. Axelsson of failing to comply with her monitoring agreement and implying to the State's medical licensing board that she has been covering up alcohol use, reported as "many positive breathalyzer tests." This despite acknowledged malfunction of the breathalyzer that Dr. Axelsson was using, Dr. Axelsson's repeated follow up urinalyses that have not shown alcohol metabolites, and Dr. Axelsson having submitted to her own testing of a hair sample on March 3, 2022 that showed no alcohol consumption in the past 180 days (since September 4, 2022, or before the beginning of her monitoring agreement) and providing those results to ND PHP on March 11, 2022.

> ND PHP knew Dr. Axelsson had lab results showing no alcohol consumption
> during the entirety of her monitoring agreement, knew or should have known that
> it was likely the breathalyzer that was malfunctioning, and yet reported to Dr.
> Axelsson's licensing board that she continues to have positive breathalyzer tests.

Doc. No. 23 ¶¶ 76-77. The allegations in the amended complaint go beyond NDPHP simply
reporting truthful information regarding breathalyzer tests. Inherent to the allegations are factual
assertions that NDPHP informed the Board of Medicine that Axelsson did not comply with the
monitoring agreement, a fact she disputes and argues NDPHP knew with certainty was false.
Axelsson then alleges these defamatory communications, as least in part, led to the termination of
her employment contract and her future employment contract being rescinded.  These factual
allegations are sufficient to plausibly allege a defamation claim in the form of libel against
NDPHP, and as a result, the motion to dismiss that claim is denied.

## III.    CONCLUSION

The Court has carefully reviewed the entire record, the parties' filings, and the relevant
law. For the reasons above, NDPHP's motion to dismiss for lack of jurisdiction (Doc. No. 27) is
**DENIED**. NDPHP's motion to dismiss for failure to state a claim (Doc. No. 29) is **GRANTED
IN PART AND DENIED IN PART**. The motion to dismiss is granted as to Axelsson's breach of
contract claim against NDPHP and that claim is dismissed without prejudice. The motion to
dismiss is denied as to all remaining claims against NDPHP.

**IT IS SO ORDERED**.

Dated this 25th day of August, 2022.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court